IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| WARREN LEE HILL, JR., | : |
| | : |
| Petitioner, | : |
| | : |
| vs. | : |
| | : CIVIL ACTION NO.: 1:04-CV-151 (WLS) |
| WILLIAM TERRY, Warden,[1] | : |
| | : |
| Respondent. | : |
| | : |

## O R D E R

Pending before the Court is Petitioner's Motion for Leave to Conduct Discovery and

Authorization and Payment of Necessary Expert Services. (R. at 14.)

## I. BACKGROUND

*A. Facts*

The historical facts concerning this case were set forth as follows by the Supreme Court of

Georgia:

> Hill and the victim were both serving time at the Lee
> Correctional Institute. Early in the morning of August 17, 1990, a
> correctional officer, hearing a loud noise, rushed to Hill's cell, where
> he observed Hill bludgeoning the victim as the latter lay in his bed.
> By the time the officer called for assistance and returned to the cell,
> the victim was mortally wounded. Hill surrendered his weapon, a
> board embedded with nails, apparently removed by Hill from under
> a bathroom sink.

*Hill v. State*, 263 Ga. 37, 37-38 (1993).

*B. Procedural History*

On July 31, 1991, Petitioner was found guilty and convicted of murder and aggravated

---

[1]It appears that the originally named Respondent, Derrick Schofield, is no longer Warden at Jackson
Diagnostic and Classification Prison and that William Terry became Warden of that prison on April 1, 2005.

assault. On August 2, 1991, Petitioner was sentenced to death. (Resp't Ex. 1, p. 4, 404-405.)

Petitioner filed a notice of appeal and his conviction and sentence were affirmed by the Supreme Court of Georgia on March 15, 1993. *Hill v. State*, 263 Ga. 37 (1993). The Georgia Supreme Court denied Petitioner's motion for reconsideration on March 30, 1993, and the Supreme Court of the United States denied certiorari on November 1, 1993. *Hill v. Georgia,* 510 U.S. 950 (1993). The United States Supreme Court denied the petition for rehearing on January 10, 1994. *Hill v. Georgia*, 510 U.S. 1066 (1994).

Petitioner filed a Petition for Writ of Habeas Corpus in the Superior Court of Butts County, Georgia on April 14, 1994. (Resp't Ex. 36.) Petitioner filed his First Amended Petition for Writ of Habeas Corpus on September 26, 1996 and a second amended petition on December 13, 1996. (Resp't Ex. 39, 43.)

On May 23, 1997, the Superior Court of Butts County entered an order that held Petitioner had "'presented sufficient credible evidence which [includes] at least one expert diagnosis of mental retardation, to create a genuine issue regarding Petitioner's mental retardation'." (Resp't Ex. 49)(quoting *Fleming v. Zant*, 259 Ga. 687, 691 (1989)). Therefore, the superior court granted the writ for the "limited purpose of conducting a jury trial on the issue of Petitioner's mental retardation in the Superior Court of Lee County." (Resp't Ex. 49.)

Respondent appealed the May 23, 1997 order. (Resp't Ex. 50.) The Georgia Supreme Court remanded the case to the Butts County Superior Court and directed that court to determine, without the intervention of a jury, whether Petitioner had established his claim of mental retardation beyond a reasonable doubt. *Turpin v. Hill*, 269 Ga. 302, 304 (1998). Petitioner filed a Writ of Certiorari in the Supreme Court of the United States claiming that Georgia's requirement that Petitioner prove mental retardation beyond a reasonable doubt to avoid the death penalty violates the Due Process

2

Clause of the Fourteenth Amendment and constitutes cruel and unusual punishment in violation of the Eighth Amendment. (Resp't Ex. 67.) The Supreme Court of the United States denied the petition. (Resp't Ex. 69.)

On remand to the Butts County Superior Court, the court held an evidentiary hearing on December 12, 13, and 14, 2000. (Resp't Exs. 76-95.) On May 12, 2002, the superior court entered an order in which it found that Petitioner had failed to establish beyond a reasonable doubt his claim of mental retardation and denied Petitioner's request for habeas corpus relief. (Resp't Ex. 104.) The Court subsequently entered a supplemental order in which it addressed and denied Petitioner's remaining grounds for habeas corpus relief. (Resp't Ex. 106).

On October 1, 2002, Petitioner filed a Motion for Reconsideration of the superior court's May 13, 2002 Order. Petitioner's Motion for Reconsideration was based on two Supreme Court cases that were decided while Petitioner's state habeas case was pending in the superior court: *Atkins v. Virginia*, 536 U.S. 304 (2002) and *Ring v. Arizona*, 536 U.S. 584 (2002). (Resp't Ex. 107.) In an order dated November 19, 2002, the Butts County Superior Court vacated its previous orders and granted a "limited writ of habeas corpus so that a Lee County jury may determine whether Petitioner can prove that he is mentally retarded based upon a preponderance of the evidence." (Resp't Ex. 110.)

Respondent appealed the superior court's November 19, 2002 order and Petitioner filed a cross-appeal. (Resp't Exs. 112, 113.) The Supreme Court of Georgia reversed the superior court's November 19, 2002 order, remanded the mental retardation issue to the Butts County Superior Court a second time, and affirmed the superior court's denial of relief to Petitioner on all other grounds in the habeas petition. *Head v. Hill*, 277 Ga. 255 (2003). Petitioner filed a Motion for Reconsideration that the court denied on November 7, 2003. (Resp't Exs. 125, 126.)

3

On March 5, 2004, the Superior Court of Butts County ordered that "in compliance with the Remittitur of the Supreme Court, the Orders of this court dated May 13, 2002, and September 16, 2002 constitute the Final Order of this Court on these matters." (Resp't Ex.127.)

Petitioner filed his federal petition for writ of habeas corpus on October 5, 2004, and Respondent filed his answer/response on November 8, 2004. (R. at 2, 8.)

## II. STANDARDS GOVERNING DISCOVERY AND APPOINTMENT OF EXPERTS IN FEDERAL HABEAS CORPUS CASES

### A. Requests for Discovery

The Supreme Court has stated that "a habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Rule 6(a) of the Rules Governing § 2254 Cases (hereinafter "Rule 6") provides that "[a] party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise." The Supreme Court has explained that Rule 6(a) is meant to be consistent with *Harris v. Nelson*, 394 U.S. 286 (1969). *Bracy*, 520 U.S. at 909; *See also* Rule 6 Advisory Committee's Notes. Therefore, a petitioner has established "good cause" for discovery if "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." *Harris*, 394 U.S. at 299.

In two fairly recent cases–*Isaacs v. Head*, 300 F.3d 1232 (11th Cir. 2002) and *Crawford v. Head*, 311 F.3d 1288 (11th Cir. 2002)–the United States Court of Appeals for the Eleventh Circuit elaborated on the standards for allowing discovery in the context of federal habeas corpus cases. In *Isaacs* the court explained that "[i]n passing [the Anti-terrorism and Effective Death Penalty Act], Congress modified the discretion afforded to the district court and erected additional barriers limiting a habeas petitioner's right to **discovery** or an evidentiary hearing." *Isaacs*, 300 F.3d at 1248-49

4

(emphasis added). In both *Isaacs* and *Crawford*, the Eleventh Circuit held that if a habeas petitioner has not been "reasonably diligent" in developing the factual basis for a claim while in state court, he will not be allowed to do so in federal court unless he can meet the narrow exceptions provided in 28 U.S.C. 2254 (e)(2). [2] *Isaacs*, 300 F.3d at 1248-49; *Crawford*, 311 F.3d at 1329. Moreover the court defined "reasonably diligent" to mean that "'the prisoner made a reasonable attempt, in light of information available at the time, to investigate and pursue claims in state court.'" *Isaacs*, 300 F.3d at 1248-49. (quoting *Williams v. Taylor*, 529 U.S. 420, 435 (2000)).

## B. Requests for financial assistance

To the extent that Petitioner is seeking financial assistance for experts, his request is governed by 21 U.S.C. § 848 (q)(9), which provides as follows:

> Upon a finding that investigative, expert, or other services are reasonably necessary for the representation of the defendant, whether in connection with issues relating to guilt or the sentence, the court may authorize the defendant's attorneys to obtain such services on behalf of the defendant and, if so authorized, shall order the payment of fees and expenses therefor under paragraph (10).

*Id.*

Petitioner has not cited, and the Court has not found, any Eleventh Circuit cases directly interpreting and applying this statute. However, other circuits have held that petitioners "are entitled to experts . . . only upon a showing of reasonable necessity." *Rojem v. Gibson*, 245 F.3d 1130, 1139 (10th Cir.

---

[2] 28 U.S.C. § 2254 (e)(2) provides as follows:

If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-

(A) the claim relies on-

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

2001). Moreover, if the expert in question will provide information that is merely redundant of that already on record, expert assistance is not reasonably necessary. ***Bonin v. Caldera***, 59 F.3d 815, 838 (9th Cir. 1995); ***Wright v. Angelone***, 151 F.3d 151, 163 (4th Cir. 1998)

## III. PETITIONER'S SPECIFIC REQUESTS

In this case, Petitioner makes two specific requests. First, Petitioner seeks funds to retain Ruth Luckasson, past President of the American Association on Mental Retardation (AAMR), Chair of New Mexico's Program for Mental Retardation, and Director of the University of New Mexico's Special Education Program. Petitioner explains that "Ms. Luckasson is a nationally renowned expert on mental retardation" and "is uniquely qualified to discuss the state habeas court's fact-finding." (Pet'r May 20, 2005 Br., p. 6-7.)

The Court finds that Petitioner has not shown "good cause" to conduct additional discovery regarding Petitioner's mental retardation nor has Petitioner shown that the services of Ms. Luckasson are "reasonably necessary" in order to perform such discovery and present the same to this Court. A review of the voluminous record in this case shows that, at the state level, Petitioner hired numerous mental health experts to testify regarding his mental retardation. Moreover, the record reveals that Petitioner thoroughly litigated both his mental retardation claim and allegations concerning the burden of proof in Georgia for such mental retardation claims. Specifically, at the state habeas level, the Butts County Superior Court held a three day evidentiary hearing at which both Petitioner and Respondent presented extensive evidence relating to Petitioner's claim of mental retardation. (Resp't Exs. 76-95.) At this hearing, six mental health experts testified at length regarding Petitioner's mental retardation. (Resp't Exs. 76-78.) Moreover, Petitioner alone submitted sixty-three (63) affidavits from individuals addressing the issue of Petitioner's mental retardation. (Resp't Ex. 79-95.) These included affidavits from numerous lay witnesses who

6

provided evidence to support Petitioner's claim of mental retardation and affidavits from additional
mental health experts who had evaluated Petitioner and provided testimony regarding his mental
retardation. (Resp't Exs. 79-95.)[3]

Any testimony that Ms. Luckasson could provide regarding Petitioner's "adaptive skills"
and/or mental retardation in general would be merely cumulative and redundant of the extensive
testimony that has already been provided in this case. As such, the Court finds that Petitioner has
failed to show her services are "reasonably necessary."

The same can be said for the second mental health expert for whom Petitioner seeks funds
to employ–James Ellis. According to Petitioner, Mr. Ellis is an attorney and mental retardation
expert. Petitioner states that Mr. Ellis can present evidence to this Court to show that Georgia's
requirement that Petitioner prove mental retardation beyond a reasonable doubt is contrary to *Atkins
v. Virginia*, 536 U.S. 304 (2002) and *Cooper v. Oklahoma*, 517 U.S. 348 (1996). Petitioner
thoroughly addressed this issue at the state level. In fact, in at least two briefs that he presented to
the habeas court, he cited articles written by James Ellis and Ruth Luckasson to support his
arguments regarding Georgia's burden of proof for mental retardation claims. (Resp't Exs. 107-
109.) Anything that Mr. Ellis could provide to the Court at this time would be merely cumulative
and redundant to testimony and arguments already made. Furthermore, the question regarding
whether Georgia's requirement that Petitioner prove his mental retardation beyond a reasonable
doubt is contrary to federal law is a legal determination that must be made by this Court–not by
expert witnesses. Given this, Petitioner has failed to show that Mr. Ellis' services are "reasonably

---

[3]It appears that, including both live and affidavit testimony, Petitioner presented expert testimony from a
total of seven mental health experts: Dr. Jethro Toomer, Dr. Donald Stonefield, Dr. Brittain, Dr. Daniel Grant, Dr.
Thomas Hyde, Dr. H. Eber, and Dr. William Dickinson.

necessary."

Because testimony from both Ruth Luckasson and James Ellis would be redundant, the Court finds that petitioner has not shown that their expert services are "reasonably necessary" under 21 U.S.C. § 848(q)(9). ***See Wright v. Angelone***, 151 F.3d 151, 163 (4th Cir. 1998) (explaining that the petitioner's "mental deficiencies were thoroughly investigated, presented to the jury, and ultimately resolved at trial. Consequently, the district court did not abuse its discretion when it concluded that a fourth expert opinion was not 'reasonably necessary'.") Moreover, due to the number of experts and the volume of evidence that has already been presented on the issue of Petitioner's mental retardation, Petitioner has not shown "good cause" under Rule 6 to conduct further discovery on this issue. Therefore, the Court **DENIES** Petitioner's Motion for Leave to Conduct Discovery and Authorization and Payment of Necessary Expert Services.

**SO ORDERED**, this 8th day of July, 2005

/s/W. Louis Sands
W. LOUIS SANDS, CHIEF JUDGE
UNITED STATES DISTRICT COURT

lnb